UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————- X  Case No.

MICHAEL SHAUGHNESSY,

                Plaintiff,

                                      **COMPLAINT**

   -against-

SCOTIABANK, and KAY LAZIDIS,            **JURY TRIAL DEMANDED**
MICHAEL TROMBLEY and ELYSSA
HERMAN, *in their individual and
professional capacities;*

                Defendants.

——————————————————————X

      Plaintiff Michael Shaughnessy by his attorneys, Filippatos PLLC, hereby alleges against Defendants Scotiabank ("Scotiabank" or the "Company" or the "Bank"), Kay Lazidis, Michael Trombley, and Elyssa Herman (together, the "Individual Defendants") as follows:

## NATURE OF THE CASE

      1.     This is a case about how Scotiabank, a multinational banking and financial services company, treated a hardworking and highly dedicated employee as disposable merely because of his advanced age and the Bank's desire to drive out older employees.

      2.     As described below, Plaintiff Michael Shaughnessy, a 63-year-old man who did nothing but give his all to Scotiabank, was discriminated against for being "too old" by, *inter alia*, being denied a Director-level role at the Bank that he had earned and deserved.

      3.     As a result of this despicable, ageist behavior, Mr. Shaughnessy has been devastated and left with no choice but to bring this action in order to hold Scotiabank accountable for violating laws that prohibit workplace discrimination and retaliation on the basis of age, namely the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law, New York State Executive Law, §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code §§ 8-107, *et seq.* ("NYCHRL").

4. Mr. Shaughnessy seeks damages, as well as injunctive and declaratory relief, to redress the injuries he has suffered – physical, emotional, reputational, career-wise, and pecuniary – because of being discriminated and retaliated against by his employer because of his age.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

5. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

6. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under New York state and city law pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred within the Southern District of New York.

8. By Plaintiff: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 14, 2021, as well as his Amended Charge, filed on September 16, 2021; and (b) receiving a Notice of Right to Sue from the EEOC on September 27, 2022, and (c) filing this action without 90 days thereof, Plaintiff has satisfied all the procedural prerequisites for the commencement of the instant action.

9. Contemporaneously with this filing, copies of this Complaint have been mailed to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code.

## **THE PARTIES**

10. Plaintiff is a United States citizen who is and has been at all relevant times a resident of the State of Connecticut and County of Fairfield.

11. Plaintiff is 63 years old and suffers from severe anxiety and depression.

12. At all times relevant hereto, Plaintiff was an employee of Scotiabank.

13. At all times relevant hereto, Defendant Scotiabank was and is a privately held corporation duly existing pursuant to, and by virtue of, the laws of Canada. Defendant Scotiabank is headquartered in Halifax, Canada, but also maintains a principal place of business located at 250 Vesey Street, New York, New York 10281.

14. Upon information and belief, Defendant Scotiabank employs over fifty (50) individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

15. Upon information and belief, at times relevant hereto, Defendant Elyssa Herman was and is an individual residing in the State of New York, as well as an employee of Defendant Scotiabank, holding the position of "Vice President, PMO"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

16. Upon information and belief, at times relevant hereto, Defendant Kay Lazidis was and is an individual residing in the State of New York, as well as an employee of Defendant Scotiabank, holding the position of "Managing Director and Chief Operating Officer of U.S. Global Capital Markets"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

17. Upon information and belief, at times relevant hereto, Defendant Michael Trombley was and is an individual residing in the State of New York, as well as an employee of Defendant Scotiabank, holding the position of "Director and Chief Operating Officer of Equities (U.S. Global Capital Markets)"; and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

## FACTUAL ALLEGATIONS

### I. Plaintiff was an Employee of Scotiabank — Not an Independent Contractor

18. Plaintiff joined Scotiabank's New York City-based U.S. Program Management Organization ("PMO") team in June 2019, after having accumulated over thirty-seven (37) years of experience in the derivatives, securities, and banking industries.

19. Scotiabank's PMO team was responsible for leading regulatory and business initiatives for the Bank.

20. Plaintiff functioned as a Scotiabank employee in all relevant facets, despite how Scotiabank may have tried to nominally classify him as a "contractor" or "independent contractor," and irrespective of whether certain administrative aspects of Plaintiff's hiring were facilitated through a third-party company called Procom.

21. Scotiabank told Plaintiff during his recruitment that he would become a full-time employee. Based on these representations, Plaintiff accepted a Director position at the Bank in March 2021, reporting to Defendant Herman.

22. Plaintiff agreed to be paid at a rate of $125 per hour, with an expectation that he would work ten-hour days.

23. Scotiabank supplied Plaintiff with all the equipment and facilities he used to

perform his work, including a laptop computer, monitor, desk, telephone, headset, and office supplies.

24. Plaintiff had an assigned workspace at Scotiabank's New York City offices located at 250 Vesey Street, from where he worked daily from June 2019 to March 2020 when the office closed due to the pandemic.

25. Plaintiff worked exclusively for Scotiabank and not for any other company during his tenure at Scotiabank. At no time did Plaintiff offer his services to the public.

26. Plaintiff had the workload of a full time Scotiabank employee and could not have reasonably worked full or even part time for any other employer.

27. Plaintiff did not hire his own assistants or staff, but personally performed his assignments, and received support as needed from Scotiabank employees.

28. Plaintiff's primary job duties did not require any special or unique skills or expertise. Rather, as a project manager, his work involved planning, executing, and monitoring assigned projects to completion. It was also not uncommon for Plaintiff's projects to be reassigned to other employees within the PMO group or *vice versa*.

29. At all relevant times, Scotiabank controlled Plaintiff's work in all material ways, whereas Procom had no influence whatsoever.

30. Scotiabank instructed Plaintiff on how to do his job, exercised control over the terms and conditions of his work, and regarded and treated him just like any rank-and-file employee. Scotiabank even gave Plaintiff its employee handbook.

31. Plaintiff was supervised by Scotiabank employees, who determined what work he was assigned, where he had to perform it, what project management procedures and practices he had to follow, and by when he was supposed to complete his work.

32. Plaintiff had regular weekly meetings with Defendant Herman and the PMO group to discuss and plan his work. Plaintiff had to meet deadlines and milestones set by Scotiabank and was required to submit reports updating his progress using the same tools and procedures used by the rest of the PMO group.

33. Scotiabank monitored and had access to Plaintiff's work communications and required Plaintiff to conduct work using his Scotiabank email address.

34. Scotiabank gave Plaintiff long-term assignments of a continuous nature, such as creating and maintaining strategic partnerships and ensuring regulatory compliance on a continuous basis. These were operational tasks integral to Scotiabank's business and required his constant monitoring, refining, and calibrating.

35. Plaintiff had to manage multiple projects simultaneously and would regularly be assigned new projects by the Bank at its discretion.

36. Plaintiff was not paid on a per project or assignment basis.

37. Notably, even though the Bank adopted a policy in 2021 that limited the length for which it could engage an independent contractor to 18 months, Scotiabank made an "exception" for Plaintiff that allowed him to remain at the Bank well past the 18-month mark.

## II.   Defendant Herman Agrees to Promote Plaintiff to a Vacant Director Position

38. Based on his strong and consistent performance, Scotiabank renewed Plaintiff's contract three times in 2020 and 2021. Plaintiff's hourly pay rate was also increased in 2019.

39. In March 2021, Defendant Herman notified Plaintiff that the PMO team was looking to fill two vacant Director positions, and that she wanted him to fill one of these vacancies.

40. On March 29, 2021, Plaintiff accepted Defendant Herman's offer.

41. A few days later, on March 31, 2021, Plaintiff attended a video meeting for the

Scotia Capital (USA) Inc. ("SCUSA") Management Committee meeting.

42. In attendance were Defendant Kay Lazidis, Managing Director and Chief Operating Officer ("COO") of U.S. Global Capital Markets (believed to be in her 40's), and Defendant Michael Trombly, Director, U.S. COO Equities (U.S. Global Capital Markets) (believed to be in his 30's) with whom Plaintiff had been working on two projects for several months but had never actually met face-to-face, whether virtually or in person.

43. This video meeting was the first time Ms. Lazidis and Mr. Trombly saw what Plaintiff, a then 61-year-old man with gray hair, looked like.

44. Sadly, Ms. Lazidis's and Mr. Trombly's interactions with and attitude towards Plaintiff changed drastically after seeing what he looked like for the first time.

45. For instance, Ms. Lazidis and Mr. Trombly suddenly and unjustifiably placed Plaintiff under a microscope and heavily criticized his work, after voicing no issues or concerns prior to this point. They also began to give Plaintiff unreasonable and gratuitous deadlines to complete assignments.

46. Ms. Herman's attitude and behavior towards Plaintiff also suddenly and inexplicably flipped.

47. For instance, on April 7, 2021, one week after Ms. Lazidis and Mr. Trombly first saw what Plaintiff looked like, Ms. Herman, for the first time, told Plaintiff that Ms. Lazidis was unhappy with his performance on the Transaction System Governance Project. However, Ms. Lazidis had never expressed any concern to Plaintiff during any of the numerous meetings they both attended.

48. Shortly thereafter, Scotiabank announced that Ms. Lazidis would be replacing a much older employee as Senior Vice President and Chief Operating Officer.

49. Then, on April 20, 2021, Plaintiff asked Ms. Herman for an update on when he would be moved to the Director role that they had agreed he would take on. Ms. Herman told Plaintiff that the Bank was still reviewing his compensation level and that she would circle back to him when she had an update.

### III. Scotiabank Discriminatorily Rescinds its Offer and Fails to Hire Plaintiff into a Director Position Because of His Age, and Hires a Younger Woman Instead

50. On May 13, 2021, Ms. Herman announced that she had hired a woman in her 40's named Eileen Stal for one of the vacant PMO Director positions.

51. Plaintiff was shocked to hear this news, as the role Ms. Stal was being hired for had been offered to and accepted by him months earlier – but *before* Ms. Lazidis and Mr. Trombly saw what he looked like.

52. Within with a few days of learning that he was being discriminatorily denied a new Director role that had already been promised to him, Plaintiff complained to Sarah Patel, Vice President, Head of Regulatory and Business Initiatives, on May 17, 2021, about how he had been discriminated against because of his age by Ms. Lazidis, Ms. Herman, and Mr. Trombly, and how their attitude towards him had shifted completely after Ms. Lazidis and Mr. Trombly realized how old he was, culminating in the Bank's unlawful failure to hire him into the Director position.

53. At the end of the meeting, Ms. Patel gave Plaintiff permission to go on paid medical leave because of the acute anxiety and depression he was experiencing due to the ageist conduct he was experiencing.

54. However, shortly thereafter, Scotiabank's HR Department told Plaintiff that he was not in fact eligible for paid medical leave because he was an independent contractor.

55. However, as detailed herein, Scotiabank was in fact Plaintiff's employer, rendering

its decision to deny Plaintiff paid leave improper and retaliatory.

### IV. Scotiabank Further Retaliates Against Plaintiff After He Files a Charge of Discrimination With The EEOC

56. On July 14, 2021, Plaintiff filed a Charge of Discrimination with the EEOC against Scotiabank for age discrimination and retaliation.

57. A few weeks later, on August 26, 2021, Plaintiff was abruptly notified that his "contract [with Scotiabank] will be ending early effective Friday, October 29, 2021." Plaintiff's contract was scheduled to expire on December 17, 2021. No reason was given for this retaliatory decision.

58. Moreover, around the time that Plaintiff was discriminatorily denied the Director position that he had been promised, Scotiabank also forced out the existing of three executives who were, upon information and belief, all above the age of 60, on the same date, April 30, 2021.

59. Scotiabank's unlawful actions have caused Plaintiff to feel severely anxious and depressed, and to suffer from debilitating migraines and insomnia.

### FIRST CAUSE OF ACTION
### AGE DISCRIMINATION UNDER ADEA
*Against Scotiabank*

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

61. Based on the facts alleged herein, Defendant Scotiabank engaged in unlawful employment practices prohibited by the ADEA by discriminating against Plaintiff because of his age.

62. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past

and future) – such as income, salary, bonuses, and other compensation that his employment entailed, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

63. Accordingly, as a result of the unlawful conduct of Scotiabank set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to him under this law, including, but not limited to, liquidated damages.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER ADEA
### *Against Scotiabank*

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

65. Based on the facts alleged herein, Defendant Scotiabank engaged in unlawful employment practices prohibited by the ADEA by retaliating against Plaintiff for engaging in protected activity by complaining of discrimination based on his age.

66. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that his employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

67. Accordingly, as a result of the unlawful conduct of Scotiabank set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to him under this law, including, but not limited to, liquidated damages.

### THIRD CAUSE OF ACTION
### AGE DISCRIMINATION UNDER NYSHRL
*Against All Defendants*

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

69. Based on the facts alleged herein, Defendants engaged in unlawful employment practices prohibited by the NYSHRL by discriminating against Plaintiff because of his age.

70. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that his employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

71. Accordingly, as a result of the unlawful conduct of Scotiabank set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to him under this law, including, but not limited to, punitive damages.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER NYSHRL
*Against All Defendants*

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

73. Based on the facts alleged herein, Defendants engaged in unlawful employment practices prohibited by the NYSHRL by retaliating against Plaintiff for engaging in protected activity by complaining of discrimination based on his age.

74. As a result of the acts and conduct complained of herein, Plaintiff has suffered and

11

will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that his employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

75. Accordingly, as a result of the unlawful conduct of Scotiabank set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to him under this law, including, but not limited to, punitive damages.

## FIFTH CAUSE OF ACTION
## AIDING AND ABETTING UNLAWFUL DISCRIMINATION AND RETALIATION UNDER NYSHRL
### *Against Individual Defendants*

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

77. By the actions described above, among others, Defendants Lazidis, Trombley and Herman knowingly or recklessly aided and abetted and directly participated in the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYSHRL.

78. As a direct and proximate result of Defendants Lazidis, Trombley and Herman's unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

79. As a direct and proximate result of Defendants Lazidis, Trombley and Herman's unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and severe emotional distress, for which he is entitled to an award of damages.

80. Defendants Lazidis, Trombley and Herman's unlawful and retaliatory actions

constitute malicious, willful and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### AGE DISCRIMINATION UNDER NYCHRL
*Against All Defendants*

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

82. Based on the facts alleged herein, Scotiabank engaged in unlawful employment practices prohibited by the NYCHRL by discriminating against Plaintiff because of his age.

83. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that his employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

84. Accordingly, as a result of the unlawful conduct of Scotiabank set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to him under this law, including, but not limited to, punitive damages.

## SEVENTH CAUSE OF ACTION
### RETALIATION UNDER NYCHRL
*Against All Defendants*

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

86. Based on the facts alleged herein, Scotiabank engaged in unlawful employment practices prohibited by the NYCHRL by retaliating against Plaintiff for engaging in protected

activity by complaining of discrimination based on his age.

87. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that his employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

88. Accordingly, as a result of the unlawful conduct of Scotiabank set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to him under this law, including, but not limited to, punitive damages.

### EIGHTH CAUSE OF ACTION
### AIDING AND ABETTING UNLAWFUL DISCRIMINATION AND RETALIATION UNDER NYSHRL
*Against Individual Defendants*

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

90. By the actions described above, among others, Defendants Lazidis, Trombley and Herman knowingly or recklessly aided and abetted and directly participated in the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYSHRL.

91. As a direct and proximate result of Defendants Lazidis, Trombley and Herman's unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

92. As a direct and proximate result of Defendants Lazidis, Trombley and Herman's unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer,

mental anguish and severe emotional distress, for which he is entitled to an award of damages.

93. Defendants Lazidis, Trombley and Herman's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the New York State Human Rights Law, New York State Executive Law, §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, Administrative Code §§ 8-107, *et seq.* ("NYCHRL"), in that Defendants discriminated against Plaintiff based on his age and retaliated against Plaintiff for engaging in protected activity;

B. Awarding damages to Plaintiff to make him whole for any monetary losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to his reputation, career prospects, and earning potential in an amount to be proven at trial;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff liquidated damages;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices against him.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue of fact and damages stated herein.

Dated: December 23, 2022
New York, New York

Respectfully submitted,

**FILIPPATOS PLLC**

By: _____
Tanvir H. Rahman
199 Main Street, Suite 800
White Plains, New York 10022
T. F: 914. 984.1111 x 505
trahman@filippatoslaw.com

*Attorneys for Plaintiff*