UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL SHAUGHNESSY,

                    Plaintiff,

-against-

SCOTIABANK, ET AL.,

                    Defendants.

---

No. 22 CV 10870 (LAP)

OPINION & ORDER

The Bank of Nova Scotia ("Scotiabank"), Kay Lazidis, Michael Trombly, and Elyssa Herman (collectively, "Defendants") move,[1] pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), to dismiss Michael Shaughnessy's ("Plaintiff") claims under New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, et seq., and New York City Human Right Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, et seq. Defendants also move, pursuant to Rule 26(d), for expedited discovery to determine Plaintiff's employment status. Plaintiff opposes both Defendants' motion to dismiss and motion to expedite discovery.[2] For the following reasons, Defendants' motion to dismiss is GRANTED in part and

---

[1] (See Notice of Mot. to Dismiss, dated Mar. 17, 2023, [dkt. no. 8]; Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Br."), dated Mar. 17, 2023 [dkt. no. 9]; Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Reply"), dated Apr. 24, 2023 [dkt. no. 17]); Defs.' Suppl. Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Suppl. Reply), dated June 7, 2023 [dkt. no. 25].)

[2] (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n Br."), dated May 15, 2023 [dkt. no. 22].)

DENIED in part, and Defendants' motion for expedited discovery is DENIED.

I.   **Background**

The facts below are drawn from Plaintiff's amended complaint. (See Am. Compl. ("Amended Complaint" or "AC"), dated Apr. 28, 2023 [dkt. no. 19].)  The Court accepts as true all factual allegations in the Amended Complaint and must draw all reasonable inferences in favor of Plaintiff.

A. **Factual Background**

Plaintiff was 61 years old when he was denied a Director-level role at Scotiabank, a multinational banking and financial services company.  (See AC ¶¶ 1-2, 53.)  In June of 2019, Plaintiff joined Scotiabank's New York City-based U.S. Program Management Organization ("PMO"), which led regulatory and business initiatives for Scotiabank.  (Id. ¶¶ 18-19.)  Plaintiff came to the role with 37 years of experience in derivatives, securities, and banking.  (Id. ¶ 18.)

Plaintiff alleges that, even though he was hired as an independent contractor through a third-party company called Procom, he "functioned as a Scotiabank employee in all relevant facets."  (Id. ¶ 20.)  Between 2019-2021, Plaintiff was assigned to work in Scotiabank's office located at 250 Vesey Street in Manhattan, New York.  (Id. ¶ 24.)  Plaintiff carried a full-time workload "exclusively" for Scotiabank and could not have held other

employment.    (See   id.   ¶¶   34-35.)    Plaintiff's   primary
responsibilities   included   planning,   executing,   and   monitoring
projects, and Plaintiff was assigned to work with other members of
the   PMO   group   as   well   as   other   employees   at   Scotiabank.   (Id.
¶ 38.)

There,   Scotiabank   instructed   Plaintiff   how   to   perform   his
responsibilities,   oversaw   the   terms   and   conditions   of   his   work,
and treated him in the same manner as it treated its rank-and-file
employees.   (Id. at ¶ 40.)   Scotiabank provided Plaintiff a copy
of   the   employee   handbook   and   equipment,   including   a   laptop,
IT-network/server,   templates,   and   software,   and   it   required
Plaintiff   to   communicate   through   his   Scotiabank   email   account.
(Id. ¶¶ 40, 43.)

Scotiabank determined Plaintiff's hours, including responding
to   requests   for   time   off   and   holidays.    (Id. ¶36.)    Plaintiff
reported   to   Scotiabank   employees,   who   assessed   his   work   and
assigned him projects.   (Id. ¶ 41.)   He attended weekly meetings
with   the   PMO   group   and   Defendant   Elyssa   Herman,   the   "Vice
President, PMO," whom Plaintiff alleges had "authority to hire,
terminate,   and   affect"   his   employment.    (See id. ¶¶ 15, 42.)

In March of 2020, the COVID-19 pandemic reached New York City.
Scotiabank   closed   its   offices   and,   on   March   16,   2020,   mandated
that   the   PMO   group   work   remotely   until   further   notice.    (Id.
¶¶ 24-25.)  On March 20, 2020, then-New York Governor Andrew Cuomo

required businesses other than those providing "essential" services to close all in-person offices and to keep 100 percent of their workforces at home.  (Id. ¶ 26.)  Accordingly, Plaintiff began to work remotely from his home in Fairfield County, Connecticut.  (Id. ¶¶ 10, 27.)

While working remotely in Connecticut, Plaintiff continued to pay New York State and City taxes for 2020 and 2021.  (Id. ¶ 28.) Plaintiff alleges that at no point did Scotiabank notify him that he was "anything but a New York [S]tate and City-based worker." (Id. ¶ 30.)  Between 2020 and 2021, Plaintiff's contract was renewed three times due to Plaintiff's "strong and consistent performance."  (Id. ¶ 48.)

In March of 2021, Defendant Herman informed Plaintiff that she wanted him to fill one of two vacant Director positions within the PMO group.  (Id. ¶ 49.)  On March 29, 2021, Plaintiff accepted the offer.  (Id. ¶ 50.)

On March 31, 2021, Plaintiff attended a video meeting with the Scotia Capital (USA), Inc. Management Committee.  (Id. ¶ 51.) Also in attendance were Defendants Kay Lazidis, the Managing Director and Chief Operating Officer of U.S. Global Capital Markets, and Defendant Michael Trombly, the Director and U.S. Chief Operating Officer of Equities.  (Id. ¶ 52.)  Plaintiff had worked with Defendants Lazidis and Trombly on two prior projects but had never met them face-to-face.  (Id.)  As Plaintiff alleges, this

video meeting was the first time that Defendants Lazidis and Trombly (whom Plaintiff alleges to be in their 30s and 40s, respectively) saw Plaintiff – "a then 61-year-old man with gray hair." (Id. ¶¶ 52-53.)

After the March 31, 2021 meeting, Defendants Lazidis and Trombly began to criticize Plaintiff's work for the first time in Plaintiff's tenure and to assign him unreasonable deadlines. (See id. ¶¶ 54-57.)

On April 20, 2021, Plaintiff asked Defendant Herman when his promotion would take effect, and she replied that his compensation package was still under review. (Id. ¶ 59.) On May 13, 2021, just weeks later, Defendant Herman announced that a woman in her 40s would instead fill one of the vacant Director positions. (Id. ¶ 60.)

Four days later, on May 17, 2021, Plaintiff complained internally to the Vice President and Head of Regulatory and Business Initiatives that he believed Defendants Herman, Lazidis, and Trombly had failed to hire him for the Director role due to his age. (Id. ¶ 62.) Plaintiff was initially permitted to take paid medical leave to treat the acute anxiety and depression that resulted but was informed shortly thereafter that, as an independent contractor, he was ineligible for such benefits. (Id. ¶ 63.)

On July 14, 2021, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 66.)  On August 26, 2021, Plaintiff received notice that Scotiabank had decided to terminate Plaintiff's contract, which was previously scheduled to expire on December 17, 2021, effective as of October 29, 2021.  (Id. ¶ 67.)  Scotiabank's PMO group resumed work in person at the New York City office location on November 1, 2021.  (Id. ¶ 32.)

### B.  **The Amended Complaint**

On December 23, 2022, Plaintiff filed the instant action. (Dkt. no. 1.)  On April 28, 2023, Plaintiff filed his Amended Complaint, alleging claims of age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, et seq., the NYSHRL, and the NYCHRL. (See generally AC.)  Defendants move (1) to dismiss Plaintiff's State and City law claims, and (2) to expedite discovery with respect to Plaintiff's ADEA claims.  (Defs.' Br. at 5-6, 8-11.) Plaintiff opposes Defendants' motion.  (See generally Pl.'s Opp'n Br.)

## II.  **Legal Standards**

### A.   **Federal Rule of Civil Procedure 12(b)(1)**

Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate

it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Moreover, on a motion to dismiss for lack of subject matter jurisdiction, "the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff." Pedroza v. Ralph Lauren Corp., No. 19-CV-08639 (ER), 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted" where a plaintiff has failed to put forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In the discrimination context, a "complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2013) (alterations omitted).

C.  **Federal Rule of Civil Procedure 26(d)**

Federal Rule of Civil Procedure 26(d) provides, in relevant part, that a party to a civil action may not seek discovery before the parties have conferred pursuant to Rule 26(f).  Fed. R. Civ. P. 26(d).  In deciding whether to grant expedited discovery, courts in this district "examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances."  Doe1 v. Congregation of Sacred Hearts of Jesus & Mary, No. 21-CV-6865 (VSB), 2022 WL 2901403, at *1 (S.D.N.Y. July 22, 2022) (internal quotation marks and citation omitted).  In doing so, courts apply a flexible standard of "reasonableness" and "good cause."  Stern v. Cosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (quoting Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005).  A party may show good cause through evidence of "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

III. **The Motion to Dismiss**

Plaintiff alleges that Defendant Scotiabank violated the ADEA (1) by failing to promote him to a Director-level position, and

(2) by retaliating against him after he reported the alleged discrimination.  (AC ¶¶ 71, 75.)  Plaintiff also brings supplemental claims against all Defendants, under the NYSHRL and the NYCHRL, for age discrimination and retaliation.  (Id. ¶¶ 79, 83, 92, 96.)[3]  Finally, Plaintiff sues Defendants Herman, Lazidis, and Trombly, in their individual capacities, for allegedly aiding and abetting Scotiabank's unlawful discrimination and retaliation. (Id. ¶¶ 87, 100.)  For the following reasons, Counts Three, Four, Six, and Seven are dismissed against the individual Defendants, but they survive as applied to Scotiabank.  Counts Five and Eight are dismissed with prejudice.

### A.   **Plaintiff's Employment Status**

Defendants primarily argue that Plaintiff cannot bring claims under the ADEA because he was an independent contractor and is therefore ineligible for ADEA protection.  (Defs.' Br. at 8-10.) The operative test for determining whether a party is an employee or an independent contractor under the ADEA is the fact-intensive inquiry set out in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989).  Reid directs courts to weigh the following factors:

> [1] the hiring party's right to control the manner and
> means by which the product is accomplished . . .
> [;][2] the skill required; [3] the source of the

---

[3] Notably, Counts Six and Seven only allege conduct by Scotiabank despite including headings that purportedly assert claims against "all Defendants."

instrumentalities and tools; [4] the location of the
work; [5] the duration of the relationship between the
parties; [6] whether the hiring party has the right to
assign additional projects to the hired party; [7] the
extent of the hired party's discretion over when and how
long to work; [8] the method of payment; [9] the hired
party's role in hiring and paying assistants;
[10] whether the work is part of the regular business of
the hiring party; [11] whether the hiring party is in
business; [12] the provision of employee benefits; and
[13] the tax treatment of the hired party.

Id. at 751-52.  In applying the Reid factors to anti-discrimination
cases, including claims under the ADEA, a court is to give "'added
weight' to the first factor – the hiring party's right to control
the manner and means of work – due to its quintessential importance
in the common law conception of an employee-employer
relationship."  Ward v. Cohen Media Publ'ns LLC, No. 1:22-CV-06431
(JLR), 2023 WL 5353342, at *5 (S.D.N.Y. Aug. 21, 2023) (quoting
Meyenhofer v. Larsen & Toubro Infotech Ltd., 503 F. Supp. 3d 39,
46 (S.D.N.Y. 2020)).  Courts in this district determine whether
the employer exercised "control" based on whether the hiring party
oversees that party's work, tasks, or responsibilities.  See
Meyenhofer, 503 F. Supp. 3d at 47.  "Formalistic factors," such as
"employee benefits or tax treatment," should not be "rigidly"
relied upon.  Id.

Defendants argue that Plaintiff's contract is with
third-party provider Procom.  (Defs.' Br. at 10.)  Yet, "an
independent contractor agreement is not determinative of
employment status."  Ward, 2023 WL 5353342, at *6.  Defendants

10

further assert that limited discovery might show that Plaintiff was an independent contractor because, among other reasons, he was issued a 1099 tax form as opposed to a W-2.  (Defs.' Br. at 10.) Putting aside that Defendants do not squarely argue how Plaintiff has failed to plead sufficient facts supporting employee status at this stage of the litigation (that is, instead of addressing the facts already proffered by Plaintiff, Defendants forecast what they anticipate discovery could reveal), "formalistic factors" such as "tax treatment" are not to be "rigidly" relied upon.

Plaintiff asserts that Scotiabank controlled how, when, and where he performed his job.  Scotiabank provided Plaintiff with an employee handbook and equipment, including a laptop and work email address, which Plaintiff was required to use for work-related projects.  (AC ¶¶ 40-41, 43-45.)  Scotiabank assigned Plaintiff projects, set his deadlines, and delivered feedback on his work product.  (Id. ¶¶ 41-42.)  Plaintiff attended weekly meetings, at which he updated a Scotiabank supervisor, Defendant Herman, on the status of his projects.  (See id. ¶ 42.)  These facts alone, taken as true for purposes of the instant motion, demonstrate that Scotiabank exercised control over Plaintiff.

Additionally, as to the remaining Reid factors, Scotiabank determined Plaintiff's work hours, holidays, and requests for time off.  (Id. ¶ 36.)  Scotiabank required Plaintiff to perform his work in person in the New York City office (before the COVID-19

pandemic), and Scotiabank compensated Plaintiff an hourly rate instead of on a per-project or on-assignment basis. (Id. ¶¶ 22, 36, 46.) Lastly, Scotiabank assigned Plaintiff "long-term assignments of a continuous nature," including maintaining strategic partnerships and regulatory compliance. (Id. ¶ 44). All of these facts, taken together, plausibly allege that Plaintiff was an "employee" under the Reid test. Eventually, a fuller record and added context could produce a different conclusion, but, at this early stage, Plaintiff has plausibly established an employer-employee relationship sufficient to invoke ADEA protection.

## B. ADEA Claims

Interestingly, Defendants do not move to dismiss Plaintiff's ADEA claims in their opening brief. Only in Defendants' Supplemental Reply do they raise, in passing, Plaintiff's failure to plead a cognizable claim for failure to hire under the ADEA. (See Defs.' Suppl. Reply at 3-4.) Even so, Plaintiff has asserted two claims under the ADEA: (1) a claim for age discrimination and (2) a claim for retaliation. (See AC ¶¶ 71, 75.)

Although the Court acknowledges that, by moving for expedited discovery, Defendants insinuate that Plaintiff has failed to plead sufficient facts to make out plausible claims under the ADEA, the Court is unwilling to venture beyond the arguments briefed in

Defendants' submissions.  As Defendants do not move to dismiss the ADEA retaliation claim, it survives.

Still, the Court observes some friction between Plaintiff's two ADEA claims.  On the one hand, Plaintiff argues that because he is asserting a theory of "failure to hire," he is an "individual" covered by Section 623(a)(1) of the ADEA.[4]  On the other hand, Plaintiff argues that he is an "employee" for purposes of asserting the ADEA retaliation claim.  If Plaintiff is, as he argues, an "employee," then he is pleading a theory of failure to promote instead of failure to hire.  Accordingly, the Court construes the discrimination claim as stemming from Scotiabank's alleged failure to promote Plaintiff and analyzes it as follows.

The ADEA provides that, for individuals over the age of 40, employers may not "discriminate against an[] individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  Claims of age discrimination are analyzed using the McDonnell Douglas burden-shifting evidentiary framework.  Matias v. Montefiore Med. Ctr., No. 20-CV-2849 (VEC), 2022 WL 4448585, at *4 (S.D.N.Y. Sept. 23, 2022).

---

[4] The ADEA provides, in relevant, part that "(a) It shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."). 29 U.S.C. § 623(a)(1) (emphasis added).

To establish a prima facie case of age discrimination, a plaintiff must show that he (1) is a member of a protected class, (2) is qualified for the position, (3) suffered an adverse employment action, and (4) such action occurred under circumstances "giving rise to an inference of discrimination." See Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012) (quotation omitted); see also Green v. Town of East Haven, 952 F.3d 394, 403 (2d Cir. 2020).

To survive a motion to dismiss, a plaintiff need not plead every element of a prima facie case; rather, a plaintiff need only plead facts plausibly alleging that (1) the employer took an adverse action and (2) age was the "but for" cause of that adverse action. Boonmalert v. City of N.Y., 721 F. App'x 29, 32 (2d Cir. 2018) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86-87 (2d Cir. 2015)); Santana v. Mount Vernon City Sch. Dist./Bd. of Educ., No. 20-CV-3212 (NSR), 2021 WL 4523770, at *10 (S.D.N.Y. Sept. 30, 2021).  That is, the adverse employment action must have resulted "because of age" and not have been merely a "motivating factor."  Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 303 (2d Cir. 2021) (quoting Gross v. FBL Fin. Servs., 557 U.S. 167, 174 (2009)).

Defendants argue, in their Supplemental Reply, that Plaintiff cannot plausibly allege causation.  (Defs.' Suppl. Reply at 4.) This Court disagrees.  Courts in this district infer age-based

employment discrimination from, for example, an employer's criticism of a plaintiff's performance in age-related degrading terms, invidious comments about others in the protected age class, preferential treatment of younger employees, a sequence of events leading to a plaintiff's termination, or the timing of a plaintiff's termination. Nnebe v. City of N.Y., No. 22 Civ. 3860 (VEC)(SLC), 2023 WL 9100339, at *13 (S.D.N.Y. Nov. 9, 2023); Ward, 2023 WL 5353342, at *11.

Here, Plaintiff was a 61-year-old man at the time of the alleged discrimination. (AC ¶ 53.) The superiors who engaged in alleged conduct were all in their 30s and 40s, and the woman promoted to the Director-level position was also in her 40s. (Id. ¶¶ 52, 60.) Although replacement by a younger woman in her 40s is insufficient to create an inference of discriminatory intent, see Adams v. N.Y. State of Educ. Dep't, 752 F. Supp. 2d 420, 465-66 (S.D.N.Y. 2010), the timing of the events is notable here.

Plaintiff had worked for Scotiabank and with the individual Defendants for months before Defendants Lazidis and Trombly were alerted to his age. (AC ¶¶ 18, 52-53.) During that time, Plaintiff had received only positive reviews, and he was offered (and accepted) a promotion to a Director-level position. (Id. ¶¶ 48-50). Just one week after Defendants Lazidis and Trombly saw Plaintiff's appearance for the first time, Defendant Lazidis shared, also for the first time, that she had suddenly become

unhappy with Plaintiff's performance.  (Id. ¶ 57.)  When Plaintiff contacted Defendant Herman less than two weeks later to ask when his promotion would take effect, Defendant Herman responded that Scotiabank was still reviewing the terms of his compensation.  (Id. ¶ 59.)  Approximately three weeks after that conversation, Plaintiff learned that an employee in her 40s had received the Director role.  (Id. ¶ 60.)

Plaintiff's claim is bolstered by allegations of Scotiabank's systemic preference for younger employees.  Around that same time, Scotiabank allegedly "forced out" three executives, whom Plaintiff asserts were over the age of 60.  (Id. ¶ 68.)  Plaintiff has thus pleaded sufficient facts to make out a claim for age discrimination.  Accordingly, both ADEA claims survive.

## C.   Subject-Matter Jurisdiction over State and City Claims

Defendants also argue that Plaintiff's claims under the NYSHRL and the NYCHRL should be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  (Defs.' Br. at 5-6.) Specifically, Defendants argue that Plaintiff is not statutorily protected by the NYSHRL or the NYCHRL because Plaintiff was living and working in Connecticut during the alleged discrimination, and

he therefore did not experience the requisite "impact" in New York. (See id. at 5).[5]  This Court disagrees.

The NYSHRL and NYCHRL were designed to protect inhabitants and persons "within" the State or City, respectively, from "unlawful discriminatory practices." Hoffman v. Parade Publ'ns, 15 N.Y.3d 285, 291-92 (2010) (internal quotation marks omitted). Although neither statute directly defines what it means to be "within" the State or City, the New York Court of Appeals addressed this question in the case of Hoffman v. Parade Publications. See generally id.  There, an employee based out of his employer's Atlanta office claimed that he had been discriminatorily terminated in violation of the NYSHRL and the NYCHRL because the termination decision came out of the New York City headquarters. Id. at 288.  The New York Court of Appeals, in affirming dismissal, held that a non-resident plaintiff "must plead and prove that the alleged discriminatory conduct had an impact in New York" and that such a "tangential connection" to the City and State was insufficient to invoke either statute's protections.  Id. at 291-92.

In Hoffman's wake, courts have held that a non-resident's random meetings or travel into the City or State are "tangential"

---

[5] As Plaintiff resides in Connecticut, the parties agree that the only basis for Plaintiff to plead claims under the NYSHRL and the NYCHRL is for him to plead that, as a non-resident, he experienced the impact in New York.

and do not satisfy the impact test.  See, e.g., Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 182-83 (2d Cir. 2016) (dismissing a NYCHRL claim where the patients with whom the plaintiff communicated were based in New York City, but the plaintiff worked in, was supervised, and was terminated in Yonkers); Fried v. LVI Servs., Inc., 500 F. App'x 39, 42 (2d Cir. 2012) (affirming dismissal of a NYCHRL claim where the plaintiff lived and worked in Connecticut but attended meetings and communicated frequently with colleagues in New York City); Pakniat v. Moor, 192 A.D.3d 596, 596-97 (2021) (dismissing the NYSHRL and NYCHRL claims where the plaintiff lived and worked in Montreal throughout her entire employment).

Defendants argue that Hoffman and its progeny geographically bar Plaintiff's NYSHRL and NYCHRL claims because Plaintiff was physically in Connecticut during the alleged retaliation.  (Defs.' Br. at 5-6; Defs.' Reply at 2-5; Defs.' Suppl. Reply at 5-6.) Defendants further contend that the COVID-19 overlay does not alter the analysis in any way.  (See Defs.' Reply at 2-5.)  In attempting to paint this case as asked and answered by Hoffman, Defendants point to Shiber v. Centerview Partners LLC, No. 21-cv-3649 (ER), 2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022) — a post-COVID-19 case that Defendants say addresses the "exact question" at issue here. (See Defs.' Reply at 4-5.)  But the plaintiff in Shiber never worked out of a New York City office and, at most, had hopes to

work in New York City down the line.  <u>Shiber</u>, 2022 WL 1173433, at *3-4.

Defendants' position, boiled down, is that not only is location an important factor, but it is the sole factor.  At least one court in this district has acknowledged that, although the impact test was intended to serve as a bright-line rule, some factual scenarios fall into a "grey area."  <u>Wexelberg v. Project Brokers LLC</u>, No. 13 CIV. 7904 (LAK)(MHD), 2014 WL 2624761, at *10 (S.D.N.Y. Apr. 28, 2014).  In <u>Wexelberg</u>, the court found that because the plaintiff had worked full-time in the New York office for 6 weeks of his 11-week employment, had worked remotely at the direction of his employer for the balance of his employment, and had been treated throughout his employment as an employee of the New York office, the plaintiff had pleaded sufficient facts at the motion to dismiss stage to satisfy the impact test.  <u>Id.</u>, at *10-11.

In rendering its holding, the <u>Wexelberg</u> court observed that "looking only to where the plaintiff was located just before he was terminated . . . could create a major loophole in the statutory protection that the [New York] Court of Appeals envisaged for employees residing out-of-state but working in New York."  <u>Id.</u>, at *11.  Moreover, "[b]y the simple stratagem of directing a targeted employee to do his work at home rather than at the New York office where he normally works, and then terminating him a few days or

weeks later, the employer would immunize itself from liability under both State and City statutes." Id.

The precise scenario hypothesized in Wexelberg is presented here. Plaintiff reported in person to the New York office for nearly ten months before the COVID-19 pandemic forced Scotiabank to close its doors and required its employees to work remotely. (AC ¶¶ 25-26.) For the entirety of the time that Plaintiff worked remotely, he did so on a temporary basis and in response to government- and company-imposed mandates. (Id. ¶¶ 25-27.) Throughout that time, he was still based out of the New York City office, and he carried out the same job functions and responsibilities as he had in New York City. That is, Plaintiff did not transition into a new or remote role, and he did not become an employee of a Connecticut-based office.

Moreover, during Plaintiff's tenure at Scotiabank, Plaintiff's contract was renewed three times, (id. ¶ 48), and his fourth contract would have expired on December 17, 2021, had Scotiabank not accelerated the end date to Friday, October 29, 2021, (id. ¶ 67). Most concerning here, and foremost in the Court's analysis, is the fact that Plaintiff would have returned to work in person in the New York City office the business day following his accelerated termination – Monday, November 1, 2021. Had Defendants terminated Plaintiff's contract just one business day later, or had they permitted his contract to

20

lapse as scheduled on December 17, 2021, without further renewal, Plaintiff would have physically worked in New York City for purposes of the impact test, and Defendants would not have this jurisdictional defense at their disposal.

The suspiciousness of Plaintiff's termination date is underscored further by the fact that Scotiabank announced its return-to-office plans in or around June 2021, and Plaintiff was subsequently informed, on August 26, 2021, that his contract would end early.  (Id. ¶¶ 31, 67.)  This scenario presents exactly the type of "loophole" foreseen in Wexelberg.

Furthermore, during the height of the COVID-19 pandemic, non-essential workers were required to shelter in place, and many people, including Plaintiff, temporarily worked from their residences.  Defendants' narrow reading of Hoffman would collapse the two avenues available to workers to invoke the State and City's statutory protections (that is, through residency or through "impact") into a single residency requirement.  Such a result is inconsistent with the New York Court of Appeals' guidance in Hoffman.  See 15 N.Y.3d at 291 (approving the "residency" and the "impact" requirements).

Here, but for the COVID-19 pandemic, Plaintiff would have continued to report in person to the New York City office – just as he had done in the nearly ten months before Scotiabank mandated remote working – and he would have continued to carry out the

21

functions of his job in person in New York City.  Plaintiff's case
thus falls within the "grey area" of the impact test, and Plaintiff
appropriately invokes the protections of the NYSHRL and the NYCHRL,
at this stage, for his retaliation claims.

Additionally, Plaintiff argues that failure-to-promote claims
should be evaluated under the more lenient standard set forth in
Anderson v. HotelsAB, LLC, 15 Civ. 712 (LTS) (JLC), 2015 U.S. Dist.
LEXIS 111820 (S.D.N.Y. Aug. 24, 2015).  (See Pl.'s Opp'n Br.
at 17-18.)  In years past, courts disagreed on what standard to
apply to failure-to-hire and failure-to-promote claims brought
under the NYSHRL and the NYCHRL.  See Syeed v. Bloomberg L.P.,
58 F.4th 64, 67 (2d Cir. 2023) (describing the law on this issue
as unsettled).  The Court of Appeals certified to the New York
Court of Appeals the question of whether a non-resident plaintiff
who is not yet employed in New York City or State can satisfy the
NYSHRL or NYCHRL's impact test where that plaintiff ultimately
proves that an employer discriminatorily deprived him or her of a
job opportunity in New York City or State.  See id. at 67, certified
question accepted, 39 N.Y.3d 1061 (2023).

Two weeks ago, the New York Court of Appeals answered that
question in the affirmative.  Syeed v. Bloomberg L.P., No. 20,
2024 WL 1097279, at *1 (N.Y. Mar. 14, 2024) (Singas, J.) ("[W]e
hold that the New York City and New York State Human Rights Laws
each protect nonresidents who are not yet employed in the [C]ity

or [S]tate but who proactively sought an actual city- or state-based job opportunity.").  In so ruling, the New York Court of Appeals explained that a failure-to-promote case is different from a termination case like Hoffman.  Id., at *3.  Importantly, the New York Court of Appeals' holding was "buttressed by important policy considerations," including the possible immunization of employers that engage in discriminatory conduct pertaining to New York City- and State-based jobs.  Id., at *4.  The New York Court of Appeals concluded that the NYSHRL and the NYCHRL were not intended "to give New York employers a license to discriminate against nonresident prospective employees."  See id.

In light of the foregoing, Plaintiff has also satisfied the more lenient standard afforded to failure-to-promote claims.  As the Court has subject-matter jurisdiction over the State and City law claims, it now analyzes each in turn.

**D.   NYSHRL and NYCHRL Discrimination Claims**

Defendants dedicate much of their briefing to disputing whether this Court has subject-matter jurisdiction over the State and City claims and very little to addressing the underlying claims.  The Court now considers whether Plaintiff has carried his burden at the pleading stage.

Plaintiff asserts claims for age discrimination under the NYSHRL and NYCHRL against all Defendants.  Claims under both statutes apply the same prima facie elements as the ADEA.

23

See Boonmalert, 721 F. App'x at 32.  Like the ADEA, the NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . , because of an individual's age, . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  Moreover, the NYSHRL extends to independent contractors, providing that it shall be unlawful for an employer to permit discrimination "against non-employees in its workplace" and expressly creating a theory of liability for "a non-employee who is a contractor . . . . "  Id. § 296-D.

The NYCHRL is even broader, making it unlawful for "an employer or an employee . . . , because of the actual or perceived age . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions[,] or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a)(3).  Pursuant thereto, plaintiffs are not required to allege that they have suffered an adverse employment action or but-for causation. Doolittle v. Bloomberg L.P., No. 22-CV-09136 (JLR), 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023).  Instead, plaintiffs must only show that they were "treated less well at least in part because of" their age.  Id. (quotation omitted).  Thus, to survive a motion to dismiss, a plaintiff must plausibly allege that he experienced differential treatment that is "more than trivial,

insubstantial, or petty" and which was a motivating factor, not the motivating factor.  Id. (citations omitted).

Because the standard under the NYCHRL is uniquely lenient, courts analyze discrimination claims under the NYCHRL "separately and independently" from claims under the ADEA.  Ward, 2023 WL 5353342, at *9.  Similarly, the 2019 amendments to the NYSHRL relaxed a plaintiff's burden, instructing courts to construe provisions liberally to accomplish the remedial purposes of the NYSHRL.  See N.Y. Exec. Law § 300.  Though the post-amendment standard under the NYSHRL comes closer to the standard of the NYCHRL, it remains unclear whether the two standards were intended to be co-extensive or whether a plaintiff's burden under the NYSHRL resides somewhere between his burdens under the ADEA and the NYCHRL.  See also Nezaj v. PS450 Bar & Rest., No. 22 CIV. 8494 (PAE), 2024 WL 815996, at *11 n.3 (S.D.N.Y. Feb. 27, 2024) (questioning the same).

### i. **Discrimination Claims Against Defendant Scotiabank**

In any event, Plaintiff has pleaded sufficient facts to allege a claim against Scotiabank for age discrimination under the ADEA, and the Court finds that Plaintiff satisfies the more lenient standards of the NYSHRL and NYCHRL with respect to his claims against Scotiabank.

Defendants argue that Plaintiff's State and City law claims must fail because he did not apply for the Director position.

(Defs.' Suppl. Reply at 3-4.)    However, even under the pre-amendment NYSHRL standard, Plaintiff need not have shown that he applied for the position if the vacancy was not posted, and he applied through informal means endorsed by Scotiabank.  See Tulino v. City of N.Y., No. 15-CV-7106 (JMF), 2016 WL 2967847, at *5 (S.D.N.Y. May 19, 2016) (quoting Petrosino v. Bell Atl., 385 F.3d 210, 226-27 (2d Cir. 2004)).    Plaintiff pleads that he was approached about the position, that he accepted the position, and that, after he accepted, he had a conversation with Defendant Herman regarding when his promotion would take effect.  (AC ¶¶ 49, 59-60.)   Plaintiff was therefore not required to plead that he applied for the role.   Accordingly, Plaintiff has asserted plausible claims against Defendant Scotiabank for discrimination under the NYSHRL and the NYCHRL.

### ii. Discrimination Claims Against Individual Defendants

By contrast, Plaintiff's NYSHRL and NYCHRL claims for age discrimination against the Defendants Herman, Lazidis, and Trombly must fail.  Although both statutes allow for individual liability, the NYSHRL limits liability to where an individual defendant is considered an "employer" of the plaintiff.  Doe v. Bloomberg, L.P., 167 N.E.3d 454, 460 (N.Y. 2021); see also Johnson v. Stop & Shop Supermarket Co., No. 22-CV-9691 (KMK), 2024 WL 1217074, at *8 n.8 (S.D.N.Y. Mar. 21, 2024) (quoting Santana, 2021 WL 4523770, at *15).  A corporate employee can never qualify as an "employer"

under the NYSHRL.  <u>See</u> <u>Doe</u>, 167 N.E.3d at 459-60.  Therefore, Plaintiff cannot make out a NYSHRL claim for discrimination against Defendants Herman, Lazidis, and Trombly.

Plaintiff's NYCHRL claim is equally futile as applied to these Defendants.  First, it is unclear whether Plaintiff intended this Count to apply to Defendants Herman, Lazidis, and Trombly.  Count Six brings a cause of action "against all Defendants" but then only alleges discriminatory conduct by Scotiabank.  (<u>See</u> AC ¶¶ 92, 94.)  Assuming the decision was intentional, under the NYCHRL, employees may incur liability for their own unlawful discriminatory conduct.  <u>Doe</u>, 167 N.E.3d at 460; <u>Nezaj</u>, 2024 WL 815996, at *7.  Employees are not vicariously liable for the acts of their employers, however.  <u>Doe</u>, 167 N.E.3d at 461.  As Plaintiff alleges only that the discriminatory conduct was the "Bank's unlawful failure to [promote] him into the Director position," the NYCHRL claim must be dismissed as applied to Defendants Herman, Lazidis, and Trombly.

Accordingly, Plaintiff's Counts Three and Six survive only as to Defendant Scotiabank.  Counts Three and Six are dismissed as to Defendants Herman, Lazidis, and Trombly.

### E.   **NYSHRL and NYCHRL Retaliation Claims**

Plaintiff next asserts claims against all Defendants for retaliation in violation of the NYSHRL and the NYCHRL.  The NYSHRL proscribes an employer from retaliating "against any person

because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified[,] or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e). Similarly, the NYCHRL prohibits employers from "retaliate[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8-107(7)).

The 2019 amendments to the NYSHRL, as with the discrimination claims, relaxed a plaintiff's burden for pleading retaliation claims. Previously, plaintiffs were subjected to the same standard as those pleading retaliation claims under Title VII. McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 66, 68-69 (S.D.N.Y. Dec. 18, 2020). That is, a plaintiff was required to show that (1) he was engaged in protected activity, (2) the defendant was aware of the activity; (3) the defendant subjected him to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Id. at 66. The post-amendment NYSHRL removes a plaintiff's burden to allege that he suffered an adverse employment action. See Ward, 2023 WL 5353342, at *13.

Under the first prong of the retaliation standard, complaining to supervisors, instituting litigation, and filing a

formal complaint all constitute protected activities.  See Nnebe, 2023 WL 9100339, at *16.  A plaintiff is not required to allege that the behavior he opposed has in fact violated the NYSHRL.  See id.  Rather, he must have possessed a good faith, reasonable belief that the employer has unlawfully discriminated.  Id.

Second, a plaintiff must also plausibly allege facts that permit a court to "reasonably infer" that the defendant knew of the protected activity.  Cardwell v. Davis Polk & Wardwell LLP, No. 19-cv-10256 (GHW), 2020 WL 6274826, at * 31 (S.D.N.Y. Oct. 24, 2020).  It is not enough for a plaintiff to complain generally about unfair conduct or unsatisfactory treatment.  See Benzinger v. Lukoil Pan Ams., LLC, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020).  Instead, the complaint must be "sufficiently pointed" to be reasonably understood by the defendant as a complaint regarding statutorily prohibited discrimination.  See id.

Third, causation under the NYSHRL requires a plaintiff to allege that the "retaliation was a but-for cause of the employer's adverse action."  Vega, 801 F.3d at 90-91 (internal quotation marks omitted).  A plaintiff can allege a causal connection "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by

the defendant." Littlejohn v. City of N.Y., 795 F.3d 297, 319 (2d Cir. 2015) (internal quotation marks and citations omitted). Although the Court of Appeals has not defined a point after which the nexus between protected activity and alleged retaliation becomes too attenuated, courts in this district have held the timing to be around 4-5 months. See Torre v. Charter Commc'ns, Inc., 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) (collecting cases).

By contrast, the NYCHRL applies a more lenient standard still. Plaintiffs are not required to plead but-for causation. Cardwell, 2020 WL 6274826, at *37. Instead, a plaintiff need only show that "retaliatory animus played some role in the employer's decision." Id.

### i. Retaliation Claims Against Defendant Scotiabank

Applying the retaliation pleading standards here, the Court finds that Plaintiff has plausibly alleged claims against Scotiabank under the NYSHRL and NYCHRL.

Plaintiff clearly engaged in protected activity when he informed Scotiabank's Vice President and Head of Regulatory and Business Initiatives of his belief that Defendants Herman, Lazidis, and Trombly had failed to promote him to the Director-level role due to his age. (AC ¶ 62.) Plaintiff again engaged in protected activity two months later when he filed a charge of discrimination with the EEOC. (See id. ¶ 66.)

Taking Plaintiff's claims as true, both the internal complaint to a supervisor and his complaint to the EEOC were "sufficiently pointed" as to put Scotiabank on notice that Plaintiff was alleging claims of statutorily unlawful discrimination. The Court can further infer that Scotiabank had knowledge of the first instance of protected activity because Plaintiff complained to a Scotiabank employee and was then contacted, shortly thereafter, by a member of the Human Resources ("HR") department to discuss the conditions of his leave. See Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).

Although Plaintiff is not required to allege that he experienced an adverse employment action under these statutes, Plaintiff alleges two incidences. The first occurred after Plaintiff had reported the alleged discrimination internally and had received permission to take paid medical leave. As mentioned supra, Plaintiff alleges that a member of Scotiabank's HR department subsequently contacted him to deny him paid medical leave, informing Plaintiff that he was in fact ineligible for those benefits. (AC ¶¶ 63-64.) The second occurred approximately six weeks after Plaintiff had filed his charge of discrimination with the EEOC. (Id. ¶ 67.) Plaintiff was notified, presumably by Scotiabank's employee, that Scotiabank had decided to accelerate the end date of Plaintiff's contract to October 29, 2021. (Id.). While the denial of benefits is questionable considering

Scotiabank's contention that Plaintiff was an independent contractor, his termination is clearly an action that could have reasonably dissuaded a plaintiff from complaining of unlawful discrimination.

Plaintiff has also pleaded sufficient facts that would indirectly establish a causal connection, under the NYSHRL, between his protected activity and each adverse employment action. Although Plaintiff does not provide the exact date that he was contacted by HR, the Court infers from the timeline of his Amended Complaint that it was no later than two months after he received permission to take leave.  (See id. ¶¶ 62-64.)  Regarding his termination, Plaintiff received notice thereof approximately six weeks after he filed a charge with the EEOC and only three months after he made an internal complaint.  (See id. ¶¶ 62, 66-67.)  In total, three months elapsed between when Plaintiff first made Scotiabank aware of the alleged unlawful discrimination and when Plaintiff experienced the second and final of the alleged retaliatory events.  Such a short span of time falls within the range that courts in this district have found sufficient to establish causation.  See Torre, 493 F. Supp. 3d at 289.

Because Plaintiff has satisfied his burden under the NYSHRL, he has therefore satisfied his burden under the NYCHRL.  The alleged sequence of events alone is sufficient for the Court to infer retaliatory animus under the NYCHRL.  See Cardwell, 2020 WL

6274826, at *38.  Accordingly, Plaintiff has established claims for retaliation against Scotiabank under the NYSHRL and the NYCHRL.

### ii. <u>Retaliation Claims Against Individual Defendants</u>

Conversely, Plaintiff has failed to allege retaliation claims against Defendants Herman, Lazidis, and Trombly for several reasons.  First, the same statutory barrier to individual liability under the NYSHRL exists here as exists under the discrimination claim.  Second, like with the discrimination claim, it is not clear whether Plaintiff intended to plead a NYCHRL claim against the individual Defendants.  Count Seven brings a cause of action "against all Defendants," but it only alleges retaliatory conduct by Scotiabank.  (<u>See</u> AC ¶¶ 96, 98.)  Third, Plaintiff does not plead facts to show that the individual Defendants were "on notice" of either instance of protected activity or that they engaged in retaliatory conduct.  The alleged retaliatory acts occurred after those which are said to have involved Defendants Herman, Lazidis, and Trombly.  That is, the chain of events commences with Plaintiff's lodging an internal complaint on May 17, 2021.  (AC ¶ 62.)  Plaintiff last claims to have interacted with the individual Defendants four days prior, on May 13, 2021.  (<u>Id.</u> ¶ 60.)

Consequently, Counts Four and Seven are dismissed as applied to Defendants Herman, Lazidis, and Trombly.

### F.   NYSHRL and NYCHRL Claims of Aiding and Abetting

Last, Plaintiff alleges State and City claims against Defendants Herman, Lazidis, and Trombly for aiding and abetting the alleged discrimination and retaliation. (Id. ¶ 101). These claims are Counts Five and Eight of the Amended Complaint. As a preliminary matter, Count Eight is styled as both a NYSHRL and NYCHRL claim. (Id. ¶ 100-03). Based on Plaintiff's pattern of pleading, the Court construes Count Eight as a claim for aiding and abetting under the NYCHRL.

Both the NYSHRL and the NYCHRL permit for individual liability on a theory of aiding and abetting, so long as a plaintiff first establishes primary violations of these statutes. Xiang v. Eagle Enters., LLC, No. 19 CIV. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (citation omitted); see also Baptiste v. City Univ. of N.Y., No. 22 Civ. 2785 (JMF), 2023 WL 4266914, at *6 (S.D.N.Y. June 29, 2023) ("[Individual defendants] can be held liable under the state statute only on an aider-and-abettor theory."); Doe, 167 N.E.3d at 459 ("[Supervisors and administrators] may incur liability [under the NYCHRL] . . . for aiding and abetting such conduct by others . . . . "). The same standard applies to claims under both statutes as their language is "virtually identical." Cardwell, 2020 WL 6274826, at *41 (quoting United States v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 365, 401 (S.D.N.Y. 2018)).

To survive a motion to dismiss, a plaintiff must plausibly allege (1) that the individual "actually participated" in the allegedly discriminatory conduct, and (2) that the individual shares the "intent or purpose of the principal actor." Griffin v. Sirva Inc., 835 F.3d 283, 293 (2d Cir. 2016); McHenry, 510 F. Supp. 3d at 68 (citing Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004)).

Here, Plaintiff asserts that Defendants have aided and abetted both the alleged discrimination and retaliation. Plaintiff has pleaded no facts, though, to allege that the individual Defendants were involved in the alleged retaliation, let alone that they "actually participated" and shared Scotiabank's retaliatory "intent and purpose."

Similarly, there is a sequencing issue with the discrimination claim. The discrimination alleged is Scotiabank's failure to promote Plaintiff to a Director role. All conduct by the individual Defendants allegedly preceded the decision to rescind Plaintiff's offer of promotion. As such, the individual Defendants cannot have participated in or shared an intent of an action that had not yet occurred.

To the extent that Plaintiff is asserting that the individual Defendants' conduct was itself discriminatory, Defendants Herman, Lazidis, and Trombly cannot have aided and abetted their own primary conduct. Boyce v. Weber, No. 19-CV-3825 (JMF), 2020 WL

5209526, at *2 (S.D.N.Y. Sept. 1, 2020).  Thus, there is no basis to prosecute these claims on the facts pleaded, and Counts Five and Eight are dismissed with prejudice.

## IV.  **The Motion to Expedite Discovery**

Finally, considering the Court's conclusion, <u>supra</u>, Defendants' motion to expedite discovery is denied as moot. Defendants' motion is further denied as unreasonable.  That is, Defendants do not allege that denial of expedited discovery would result in irreparable injury.  Moreover, bifurcating discovery would be inefficient and would serve only to delay proceedings. It would also, as Plaintiff points out, permit Defendants to take "two bites at the summary judgment apple." (Pl.'s Opp'n Br. at 20) (internal quotation marks omitted).

In light of the surrounding circumstances, Defendants' motion for expedited discovery is DENIED.

## V.  **Conclusion**

For the foregoing reasons, Defendants' motion for expedited discovery [dkt. no. 8] is DENIED.  Defendants' motion to dismiss [dkt. no. 8] is GRANTED in part and DENIED in part as follows. Defendants' motion to dismiss is granted with respect to Counts Three, Four, Six, and Seven to Defendants Herman, Lazidis, and Trombly.  Defendants' motion to dismiss is granted as to Counts Five and Eight with prejudice.  Accordingly, Defendants Herman,

Lazidis, and Trombly are dismissed from this action, and the Clerk of the Court shall remove them from the civil docket sheet.

Counsel, Plaintiff, and a decision-maker for Defendant Scotiabank shall appear for a settlement conference on April 10, 2024, at 11:00 a.m. in Courtroom 12A, 500 Pearl Street, New York, New York 10007.

**SO ORDERED.**

Dated:     March 29, 2024
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge